David R. Buchanan (DB-6368)
Roopal P. Luhana (RL-3958)
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, NJ 07102
Telephone: (973) 639-9100

William B. Federman (WF-9124)
FEDERMAN & SHERWOOD
120 North Robinson, Suite 2720
Oklahoma City, OK 73102
Telephone: (405) 235-1560

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT STONE, Derivatively on Behalf of Nominal Defendant ULTICOM, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>SHAWN K. OSBORNE, MARK A. KISSMAN, KOBI ALEXANDER, PAUL D. BAKER, MICHAEL J. CHILL, RON HIRAM, YAACOV KOREN, DAVID KREINBERG, REX A. MC WILLIAMS, and PAUL L. ROBINSON<br><br>Defendants,<br><br>and<br><br>ULTICOM, INC.,<br><br>Nominal Defendant. | Case No. ____________<br><br>**PLAINTIFF'S VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the Defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1. This is a shareholder derivative action brought by Plaintiff for the benefit of Nominal Defendant Ulticom, Inc. ("Ulticom" or the "Company") against Individual Defendants for breaches of their fiduciary duties, unjust enrichment, statutory violations, and other violations of law which occurred from fiscal year 2002 to the present (the "Relevant Period").

2. In gross breach of their fiduciary duties as officers and/or directors of Ulticom, the Individual Defendants colluded with one another to:

a. improperly backdate grants of Ulticom stock options to certain officers of Ulticom in violation of the Company's shareholder-approved stock option plans;[1]

b. improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

c. improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code;

d. produce and disseminate to Ulticom shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3. As a result of the Individual Defendants' egregious misconduct, Ulticom has sustained millions of dollars in damages, and the recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

[1] The Company has not released any details as to which officers received back-dated stock options, or the time period in which these back-dated stock options were granted. Plaintiff reserves the right to amend this Complaint to include this information at such time as it becomes available.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5. Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

6. Plaintiff Robert Stone, is a shareholder of nominal defendant Ulticom. His Verification is attached hereto.

7. Nominal Defendant Ulticom is a New Jersey corporation with its principal executive offices located at 1020 Briggs Road, Mount Laurel, New Jersey. Ulticom provides network signaling software for wireless, wireline and internet communication services.

8. Defendant Shawn K. Osborne ("Osborne") has served as the President and Chief Executive Officer of the Company since September 1997. He has served as a member of the Board of Directors of the Company since January 2000. Osborne, as

an officer of the Company, received stock options from the Company, some of which may have been backdated.

9.     Defendant Mark A. Kissman ("Kissman") has served as the Vice President of Finance and Chief Financial Officer of the Company since September 2001. Kissman, as an officer of the Company, received stock options from the Company, some of which may have been backdated.

10.    Defendant Kobi Alexander ("Alexander") served as a member of the Board of Directors of the Company from August 1995, and as Chairman from October 1997 until his resignation on May 1, 2006.

11.    Defendant Paul D. Baker ("Baker") has served as member of the Board of Directors of the Company since January 2000.

12.    Defendant Michael J. Chill ("Chill") has served as member of the Board of Directors of the Company since January 2004.

13.    Defendant Ron Hiram ("Hiram") has served as member of the Board of Directors of the Company since April 2000.

14.    Defendant Yaacov Koren ("Koren") has served as member of the Board of Directors of the Company since January 2000.

15.    Defendant David Kreinberg ("Kreinberg") served as member of the Board of Directors of the Company from January 2000 until his resignation on May 1, 2006. He also served as the Company's Chief Financial Officer from December 1999 until September 2001.

16. Defendant Rex A. McWilliams ("McWilliams") has served as member of the Board of Directors of the Company since April 2000. He also served as the Chairman and CEO of the Company from 1974 to September 1997.

17. Defendant Paul L. Robinson ("Robinson") has served as member of the Board of Directors and the Corporate Secretary of the Company since January 2000. He has served as General Counsel of the Company since January 2003.

18. Defendants Osborne, Kissman, Alexander, Baker, Chill, Hiram, Koren, Kreinberg, McWilliams and Robinson are collectively referred to hereinafter as the "Individual Defendants." Defendants Osborne and Kissman are referred to hereinafter as the "Officer Defendants." Defendants Alexander, Hiram and Kreinberg are referred to hereinafter as the "Committee Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Ulticom's quarterly reports and press releases. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not the public, each of these Individual Defendants knew that adverse facts specified herein had not been disclosed and were being concealed from the public and that positive representations which were being made were then materially false and misleading.

19. The Individual Defendants, as senior officers and/or directors, of Ulticom, were controlling persons of the Company. Each exercised their power and influence to cause Ulticom to engage in fraudulent practices complained herein.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

20. By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

21. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

22. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, *inter alia*:

a. exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b. exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

c. exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

d. exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

e. refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

23. The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

(1) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a) transactions are executed in accordance with management's general or specific authorization;

(b) transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

## FACTUAL ALLEGATIONS

### A. Stock Option Grants to the Officer Defendants

24. During the time in which back-dated stock option grants were awarded to the Officer Defendants, Defendants Alexander, Hiram and Kreinberg were members of the Compensation Committee. At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for the Officer Defendants and administered the Company's stock option plans.

25. The Compensation Committee granted Ulticom stock options to the Officer Defendants.

26. Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options are equal to the fair market value of the common stock on the day of the option grant.

27. Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

28. Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a

compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

29. The stock options granted to the Officer Defendants by the Committee Defendants were dated just after a sharp drop and just before a substantial rise in Ulticom's stock price.

30. The purported grant dates were not the actual dates on which the stock option grants were made. Rather, at the behest of the Officer Defendants, the members of the Compensation Committee improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Ulticom stock was lower than the market price on the actual grant dates. This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

**B. Dissemination of False and Misleading Financial Statements**

31. As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

a. violated the terms of the Company's shareholder-approved stock option plans;

        b.      violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

        c.      violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

        d.      produced and disseminated to Ulticom shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

32.    The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, its Form 10-K filings filed during the period in which back-dated stock options were granted.

33.    Furthermore, during the period in which back-dated stock options were granted to the present, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating:

        a.      disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants; and

        b.      filed with the SEC Form 4 filings that falsely reported the dates of stock option grants to Officer Defendants.

34.    On April 17, 2006, the Company announced that it would be unable to timely file its Annual Report on Form 10-K for the fiscal year ended January 31, 2006. Further, the Company announced that it may need to restate its historical financial statements for each of the fiscal years ended January 31, 2005, 2004, 2003 and 2002.

35. Subsequently, on June 12, 2006, the Company announced that it would be unable to timely file its 2006 fiscal first-quarter results due to the ongoing probe.

**THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES**

36. The Officer Defendants breached their fiduciary duties by:

a. colluding with the Committee Defendants to backdate stock option grants;

b. colluding with the Committee Defendants to violate GAAP and Section 162(m);

c. colluding with the Committee Defendants to produce and disseminate to Ulticom shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d. colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

37. The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

38. The members of the Compensation Committee breached their fiduciary duties by:

a. colluding with the Officer Defendants to backdate stock option grants;

b. colluding with the Officer Defendants to violate GAAP and Section 162(m);

c. colluding with the Officer Defendants to produce and disseminate to Ulticom shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

        d. colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

39. The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

40. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

**DEMAND WOULD BE FUTILE**

41. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

42. Plaintiff is an owner of Ulticom common stock.

43. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

44. The Board currently consists of eight directors: Defendants Osborne, Baker, Chill, Hiram, Koren, McWilliams and Robinson and Raz Alon, who was appointed to the Board of Directors of the Company on June 12, 2006.

45. As a result of the facts set forth herein, plaintiff has not made any demand on the Ulticom Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Individual

Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

**A. Likelihood of Substantial Liability of the Compensation Committee Defendants**

46. Defendant/Director Hiram had enhanced responsibilities as a member of the Company's Compensation Committee. That Committee was charged with direct responsibility for determining the salaries, incentive compensation, and stock option awards for the Officer Defendants and for administering the Company's stock option plans.

47. Because of the likelihood of substantial liability of Defendant/Director Hiram, he is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, and so demand upon him is futile.

**B. Each Director Defendant Lacks Independence**

48. Each Individual Defendant lacks the sufficient independence with which to render a disinterested decision on whether to pursue these claims against the Individual Defendants.

49. Defendant/Director Osborne and received backdated stock option grants. As such, he lacks the independence to decide whether to bring this action against the Individual Defendants.

50. Defendants/Directors Osborne and Robinson, as current officers of the Company, lack the independence to decide whether to bring this action against the Individual Defendants.

51. Defendant/Director McWilliams, as a former officer of the Company, lacks the independence to decide whether to bring this action against the Individual Defendants.

52. The majority shareholder of Ulticom is Comverse Technology, Inc. (Comverse), which owns 70.1% of the outstanding shares of the Company. Recently, the CEO and CFO of Comverse (Defendants Alexander and Kreinberg, respectively) resigned from Comverse in the wake of Comverse's investigation into the timing of stock options grants. Additionally, Comverse is the subject of a federal subpoena investigating the backdating of options. Defendant/Director Baker has been a Vice President of Comverse since April 1991. Defendant/Director Koren has been the managing director of Comverse Investments, Ltd., an investment division of Comverse since July 1994. Defendant/Director Robinson has been the General Counsel of Comverse since January 2003. Prior to that, Robinson was Associate General Counsel of Comverse. Since May 2006, Robinson has been Executive Vice President, Chief Administrative Officer, General Counsel and Secretary of Comverse. Defendant/Director Hiram has been a member of the Board of Directors of Comverse since June 2001. Director Raz Alon has been a member of the Board of Directors of Comverse since December 2003. Raz Alon has recently been named as CEO of Comverse. Because of their relationship with Comverse, Directors Baker, Robinson, Hiram and Alon are not independent, and demand upon them is futile.

53. Defendants Baker, Robinson, Alexander and Kreinberg were also all members of the Board of Directors of Verint Systems, Inc. Verint's majority shareholder is Comverse. Alexander and Kreinberg resigned their positions from Verint on May 1,

2006. Baker and Robinson remain on the Verint Board of Directors. Because of their relationship with Verint, Directors Baker and Robinson are not independent, and demand upon them is futile.

54. Additionally, Derivative Plaintiff has not made a demand on the Board to bring these cause of actions because such a demand would be futile and useless act for the additional following reasons:

a. In order to bring this suit, a majority of the Directors of Ulticom would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

b. The acts complained of constitute violations of the fiduciary duties owned by Ulticom's officers and directors and these acts are incapable of ratification.

c. The actions of the directors has impaired the Board's ability to validly exercise its business judgment and rendered it incapable of reaching an independent decision as to whether to accept Plaintiff's demands.

55. Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

56. Plaintiff has not made any demand on the shareholders of Ulticom to institute this action since demand would be a futile and useless act for the following additional reasons:

a. Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

b. Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

**COUNT I**

**AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY**

57. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

58. The Individual Defendants owed and owe Ulticom fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Ulticom the highest obligation of good faith, fair dealing, loyalty and due care.

59. As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

a. colluding with the Committee Defendants to backdate stock option grants;

b. colluding with the Committee Defendants to violate GAAP and Section 162(m);

c. colluding with the Committee Defendants to produce and disseminate to Ulticom shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d. colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

60. The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

61. The Committee Defendants breached their fiduciary duties by:

a. colluding with the Officer Defendants to backdate stock option grants;

      b. colluding with the Officer Defendants to violate GAAP and Section 162(m);

c. colluding with the Officer Defendants to produce and disseminate to Ulticom shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d. colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

62. The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

63. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

**COUNT II**

**AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER**

64. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

65. Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

66. The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Ulticom common stock.

67. As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT III

## AGAINST THE OFFICER DEFENDANTS FOR UNJUST ENRICHMENT

68. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

69. The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

70. To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B. Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C. Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 11, 2006

Respectfully submitted,

David R. Buchanan (DB-6368)
Roopal P. Luhana (RL-3958)
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, NJ 07102
Telephone: (973) 639-9100
Facsimile: (973) 639-9393

William B. Federman (WF-9124)
FEDERMAN & SHERWOOD
120 North Robinson, Suite 2720
Oklahoma City, OK 73102
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

*Attorneys for Plaintiff*

**VERIFICATION**

I, ROBERT STONE, declare that I have reviewed the Complaint ("Complaint") prepared on behalf of **ULTICOM INC** (NasdaqNM:ULCM) and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of common stock during the time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

6-27-06
Date

[signature]
Signature

Case 1:33-av-00001 Document 158-1 Filed 07/11/2006 Page 21 of 21

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I certify that the matters in controversy in this action are not the subject of any other action pending in any other court or of a pending arbitration proceeding.

Roopal P. Luhana, Esq.

**DATED:** July 11, 2006